MARK M. KASSABIAN, (BAR NO. 156595)
BUEHLER & KASSABIAN, LLP
350 West Colorado Boulevard, Suite 200
Pasadena, California 91105
Tel: (626) 792-0500
Fax: (626) 792-0505
e-mail: mkassabian@buehlerkassabian.com
Attorney for Defendant
MICHAEL A. MURILLO

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL A. MURILLO, <br><br> Defendant. | Case No. CR23-236-ODW-4 <br><br> REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT OF DEFENDANT MICHAEL A. MURILLO <br><br> Date: January 23, 2024 <br> Time: 1:30 P.M. <br> Place Courtroom 5D |

## I. INTRODUCTION

The opposition argues that Section 922(a)(1)(A) is not vague, and that based on the facts at hand, the statute does not fail to give adequate notice. But the government misunderstands the argument. Considering the charged conduct here, a person of reasonable intelligence would be unable to discern when a license is required to sell firearms and when one is not. The government glosses over ATF's concession on the ambiguity of the statute in question. Because of the ambiguity section 922(a)(1)(A) is unconstitutionally vague.

Second, the licensure requirements underlying the charges violate the Second Amendment. Contrary to the government's position, the charged conduct, the sale of firearms, attacks a core protection of the Second Amendment. The

rights of the people to keep and bear arms necessarily encompasses the right to acquire, buy and sell those arms. Otherwise the rights protected under the Second Amendment are chimerical. Accordingly, the charged conduct is protected by the Second Amendment's plain text.

Further, the government cannot meet its burden to show that the licensure requirements are consistent with American traditions at the time of the founding. There were no similar licensure requirements at the time the Second Amendment was ratified, Thus the Court must follow *Bruen's* analysis and conclude that, since the government cannot meet its burden of proof, the charged statute is unconstitutional.

The statute fails constitutional scrutiny, is invalid, and cannot support this prosecution. The charges against Mr. Murillo must be dismissed.

## II. DISCUSSION

**A.   SECTION 922(A)(1)(A) AS APPLIED TO MR. MURILLO IS VOID FOR VAGUENESS.**

    **1.   The ATF Has Published Best Practices Which Allow the Transfer of Firearms by Private Sellers, Acknowledging That What Does And Does Not Constitute Criminal Conduct Under The Statute Is Obscure.**

The Bureau of Alcohol, Tobacco, Firearms and Explosives has issued a brochure providing guidance on lawful conduct titled "Best Practices: Transfers of Firearms By Private Sellers." U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives, Pub. No. 5300.21; Best Practices: Transfers of Firearms By Private Sellers (January 2013), available at https://www.atf.gov/firearms/docs/guide/atf-p-530021-best-practices-transfers-firearms-private-sellers (last accessed January 9, 2024). The brochure explicitly states "[a]n unlicensed individual may transfer a firearm to another unlicensed individual residing in the same State, provided that he or she has no reason to believe the buyer is prohibited by law

from possessing firearms." *Id.* The ATF likewise concedes that "Federal law does not establish a 'bright-line' rule for when a federal firearms license is required. As a result, there is no specific threshold number or frequency of sales, quantity of firearms, or amount of profit or time invested that triggers the licensure requirement." U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives, Pub. No. 5310.2; Do I Need A License to Buy and Sell Firearms? (January 2016), available at https://www.atf.gov/file/100871/download (last accessed January 9, 2024).

Thus, the agency responsible for the regulation and enforcement of firearms laws cannot establish a rule for when a license is or is not required. Given the alleged conduct here, as applied to Mr. Murilo, a license may or may not have been required for any alleged sales. If the agency responsible for enforcement of the relevant federal law cannot provide clear guidance, but rather concedes ambiguity, Mr. Murillo, as a man of ordinary intelligence, cannot have been afforded sufficient notice of what is lawful conduct versus what is unlawful conduct. Accordingly, Mr. Murillo has been forced to guess the meaning of section 922(a)(1)(A).

The ATF's publications further confuse the situation. This highlights the statute's failure to "establish minimal guidelines to govern law enforcement[,]" rendering it void as applied to Mr. Murillo's alleged conduct. *Kolender v. Lawson*, 461 U.S. 352, 358 (1983). Section 922(a)(1)(A) does not provide sufficient notice, and the Court should dismiss the counts alleged in the Indictment against Mr. Murillo.

> **2.      Section 922(a)(1)(A)'s Scienter Element Does Not Prevent It From Being Void for Vagueness.**

The government argues that section 922(a)(1(A)'s scienter requirement "further removes any purported vagueness." (Doc. 147, p. 10.) It does not. Whether or not a criminal statute is unconstitutionally vague depends on, "whether

the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997). Although some aspects of statutory vagueness may be ameliorated by a scienter requirement, *see Hill v. Colorado*, 530 U.S. 703, 732 (2000), the flaw is not eliminated. *See United States v. Corrow*, 119 F.3d 796, 804 n.11 (10th Cir. 1997) (recognizing that a scienter requirement alone will not rescue an otherwise vague statute). The government's argument fails.

A.  SECTION 922(A)(1)(A) VIOLATES THE SECOND AMENDMENT.

    1.  **The Government's Reliance On Dicta Regarding Allegedly Presumptively Proper Firearms Restrictions Fails.**

The government's opposition reads *Heller's* dicta too expansively and *Bruen's* holding too narrowly. It argues the Supreme Court "has made clear on multiple occasions that the Second Amendment does not impact laws like the one at issue here that 'impos[e] conditions and qualifications on the commercial sale of arms.'" (Doc. 147, p. 1; *citing Heller v. District of Columbia*, 554 U.S. 570, 626–27 (2008).

The cited portion of Justice Scalia's opinion, however, is taken out of context. The full paragraph reads:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.… For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues.… Although we do not undertake an

> exhaustive historical analysis today of the full scope of
> the Second Amendment, nothing in our opinion should
> be taken to cast doubt on longstanding prohibitions on
> the possession of firearms by felons and the mentally ill,
> or laws forbidding the carrying of firearms in sensitive
> places such as schools and government buildings, or
> laws imposing conditions and qualifications on the
> commercial sale of arms.

*Heller*, 554 U.S. at 627 (citations omitted). The dicta that "conditions and qualifications" might be imposed on the commercial sale of arms is not a holding that <u>any</u> condition on the sale of firearms is permissible under the Second Amendment, let alone that section 922(a)(1)(A)'s restrictions are constitutionally permitted.[1] In other words, *Heller* never held that section 922(a)(1)(A) is constitutional under the Second Amendment. It left that question for later. The analysis mandated by *Bruen* provides the answer, and that answer is "no."

**2.   The Right to Buy And Sell Firearms Is Inherent In The Second Amendment's Plain Text.**

The government's argument that the Second Amendment does not protect the purchase and sale of firearms fails. Essentially, the government argues that although the Constitution protects Americans' right to keep and bear arms, the state nevertheless has unfettered authority to regulate, control, or forbid those Americans from acquiring those arms. In other words, Americans have the right to bear arms, but the government has the power to prevent them from exercising that

---

[1] The government cites *United States v. Castro*, No. 10-50160, 2011 WL 6157466 (9th Cir. Nov. 28, 2011) for the proposition that section 922(a)(1)(A), does not violate the Second Amendment. That opinion predates *Bruen* by more than a decade, provides no constitutional or statutory analysis, and merely cites the *Heller* dicta discussed above. Post-*Bruen* it is of no persuasive value.

5

right.

That, of course, is absurd, and the law does not support absurdities. The Second Amendment may not be interpreted to render itself a nullity. "The Presumption Against Ineffectiveness," a canon of legal interpretation states: "A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored." A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 63-65 (2012). The government's interpretation of the Second Amendment, that Americans have the right to keep and bear arms, but that the government has the power to prevent them from acquiring those arms, is an interpretation that "obstructs" rather than "furthers" the amendment's purpose, and violates this fundamental principle of textual interpretation.

Thus, the Second Amendment must be construed in a fashion that renders it effective. The right to keep and bear arms must encompass the right to acquire those arms, to manufacture, buy, and sell them.[2]

### 3. The Government Fails To Meet Its Burden To Show Section 922(a)(1)(A) is Consistent With American Tradition At The Time Of The Founding.

The government's argument that there was an American tradition at the time of the founding mandating licensure of firearms dealers fails. The government has not met its burden, and Mr. Murillo's motion to dismiss must be granted.

In its opposition the government fails to provide any historical evidence supporting the proposition that there was a tradition at the time of the founding of

---

[2] The government cites two cases by the Ninth Circuit in which the Court supposedly reached "the same result" applying a post-Heller analysis of regulations of the sale of firearms. *See Teixeira v. County of Alameda*, 873 F.3d 670, 673 (9th Cir. 2017)(en banc); and *United States v. Castro*, No. 10-50160, 2011 WL 6157466 (9th Cir. Nov. 28, 2011) (Doc. 147, p. 9). Both decisions were decided before *Bruen*, and fail to follow the analysis now mandated by *Bruen*. As discussed below, their holdings are no longer valid.

requiring licensure of firearms dealers. Instead, the government cites to the pre-*Bruen* Ninth Circuit opinion in *Teixeira* for the proposition that, "American governments before and during the founding era regulated gun sale[s]." (Doc. 147, p. 12.) As an initial matter, *Teixeira*, having been decided before *Bruen*, puts the burden of persuasion on the individual to demonstrate the lack of a historical tradition of licensure, rather than on the government to affirmatively demonstrate the existence of such a tradition. Thus, *Teixeira* is irreconcilable with *Bruen* and does not control here.[3]

Further, the historical materials cited in *Teixeira* are not sufficient to meet the government's burden. While the opinion states that, "colonial governments substantially controlled the firearms trade" (*Teixeira*, 873 F.3d at 686) it acknowledges that "the emphasis of the colonial governments was on ensuring that the populace was well armed, not on restricting individual stocks of weapons." *Id.* (internal citation omitted). The only founding-era regulations restricting the firearms trade cited in *Teixeira* were laws in four colonies forbidding the sale of firearms and ammunition to Indians. *Id.* at 685.

In context, these were laws restricting colonists, English subjects, from selling weapons to potentially hostile foreigners who were not English subjects, the natives of the colonized lands. The government provides no suggestion as to how these laws are distinctly, or even relevantly similar, to section 922(a)(1)(A)'s requirement that firearms dealers hold federal licenses. The government thus fails to meet its burden under *Bruen*.

---

[3]To determine whether a prior opinion was overruled, courts look not only to "'the holdings of higher courts' decisions'" but also their "'mode of analysis.'" *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (quoting Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L.Rev. 1175, 1177 (1989)). Such holdings "need not be identical in order to be controlling" so long as they "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.*

## III. CONCLUSION

Accordingly, Counts Twelve and Thirteen, the two counts charged against Mr. Murillo in the indictment, must be dismissed.

Respectfully submitted,

DATE: January 9, 2024                                   BUEHLER & KASSABIAN, LLP


By: */s/Mark M. Kassabian*
MARK M. KASSABIAN
Attorney for Defendant
MICHAEL A. MURILLO